# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-18-1200-TUC-JAS (LCK) |
| Plaintiff, | **REPORT AND RECOMMENDATION** |
| v. | |
| Arturo Esteban Martinez-Beltran, | |
| Defendant. | |

Pending before the Court are Defendant's Motion to Suppress Reasonable Suspicion of Stop and Defendant's Motion to Suppress Statements. (Docs. 20, 21.) The government filed responses on December 14, 2018. (Docs. 22, 23.) No replies were filed. This matter was referred to the Court for a hearing and a report and recommendation, pursuant to LRCrim 57.6. Evidence and argument were heard on February 6, 2019.[1] (Doc. 32.) This matter was submitted following oral argument at the conclusion of the hearing.

Defendant argues that law enforcement did not have reasonable suspicion to stop his vehicle; therefore, all evidence obtained after the stop, including the ammunition and Defendant's statements, should be suppressed. Having now considered the matter, the Magistrate Judge recommends that the District Court, after its independent review, grant Defendant's motion to suppress based on an illegal traffic stop. Because granting the

---

[1] "RT" refers to the Reporter's Transcript of the February 6, 2019 evidentiary hearing. (Doc. 37.)

motion based on the stop results in the suppression of all evidence obtained after the stop, including Defendant's statements, the Court need not reach Defendant's separate motion to suppress his statements.[2]

## I. FACTUAL BACKGROUND

Defendant Arturo Esteban Martinez-Beltran is charged with smuggling goods from the United States and possession of ammunition by a non-immigrant alien. (Doc. 8.) Trial is currently set for April 16, 2019. (Doc. 30.)

On May 26, 2018, Arizona DPS Officer Barry Anderson received from another officer a "be on the lookout" advisory for a 2003 black Mercedes SUV with Mexican license plate number VTL596A. (RT at 8-9, 21-22, 33.) Officer Anderson spotted the identified vehicle heading eastbound on I-10 at milepost 228. (*Id.* at 9-10.) He observed the vehicle driving at 70 miles per hour in the middle lane of the three-lane highway. (*Id.* at 10.) The vehicle maintained its speed and lane-location for approximately two miles prior to the officer stopping it. (*Id.* at 10-11, 14, 24, 27.) Officer Anderson determined the SUV was in violation of A.R.S. § 28-721 because it was travelling below the 75-mile-per-hour speed limit outside of the right-hand lane. (*Id.* at 11.) Due to heavy traffic conditions on that Friday of Memorial Day weekend, the officer testified he was concerned that a vehicle driving below the speed limit in the center lane could impede traffic and cause a collision. (*Id.* at 12-13.)

The Court admitted video recordings from Officer Anderson's two dashboard cameras, both of which begin approximately 30 seconds, or just over one-half mile, prior to Officer Anderson turning on his lights to effectuate a stop of the SUV. (*Id.* at 23, 24, 26-27; Exs. 25 (direct in-front view), 26 (wide-angle view).) At that time, the SUV was between mileposts 229 and 230. (RT at 18.)

At the beginning of the video, the SUV is approaching a semi-truck in the right-hand lane and there is a sedan behind the truck that the SUV had passed prior to the video

---

[2] If the District Court declines to adopt this Report and Recommendation and finds the traffic stop was lawful, the undersigned Magistrate Judge will issue a Report and Recommendation addressing the Motion to Suppress Statements.

1 beginning. (Ex. 26; RT 28, 27.) The officer testified that the violation occurred prior to
2 the SUV passing those vehicles, which was allowed from the center lane under the
3 statute. (RT at 18, 27-28.) In the mile-and-a half prior to the video recording, Officer
4 Anderson stated that there was space for the SUV to travel in the right-hand lane. (*Id.* at
5 34.) However, Officer Anderson also confirmed that prior to initiating his emergency
6 lights for the stop, the SUV was overtaking the sedan and semi-truck. (*Id.*)

7 In the first thirty seconds of the video, one vehicle is seen passing the SUV in the
8 left-hand lane. (Ex. 26; RT 28.) Officer Anderson acknowledged that two vehicles passed
9 the SUV on the left between milepost 228 and 230, and that the left-hand lane was clear
10 for passing. (RT at 28.) However, the officer opined that the traffic seen driving by
11 shortly after the stop revealed that traffic was backed-up by the SUV. (*Id.* at 18, 29.)

## II. DISCUSSION

13 Defendant argues that Officer Anderson did not have reasonable suspicion to stop
14 his vehicle based on a traffic violation; therefore, all evidence flowing from the illegal
15 stop should be suppressed based on the exclusionary rule.

16 The Fourth Amendment's prohibition of unreasonable searches and seizures
17 extends to the brief investigatory stop of a vehicle. *See United States v. Brignoni-Ponce*,
18 422 U.S. 873, 878 (1975). Therefore, an officer must have a "reasonable suspicion" that
19 criminal activity may be afoot to stop a motorist. *United States v. Diaz-Juarez*, 299 F.3d
20 1138, 1141 (9th Cir. 2002). A stop is valid if the officer had reasonable suspicion to
21 believe the driver violated a traffic law, regardless of the officer's intent in stopping the
22 vehicle. *See Whren v. United States*, 517 U.S. 806 (1996) (holding that a pretextual stop
23 is valid if supported by probable cause); *United States v. Lopez-Soto*, 205 F.3d 1101,
24 1104 (9th Cir. 2000) (clarifying that an investigatory traffic stop requires only reasonable
25 suspicion).

26 When the Court makes reasonable-suspicion determinations, it must look at the
27 "totality of the circumstances" of each case to see whether the detaining officer has a
28 "particularized and objective basis" for his or her suspicions about criminal activity.

*United States v. Arvizu*, 534 U.S. 266, 273 (2002). An investigatory stop must be based on facts, not the "mere subjective impressions of a particular officer," *United States v. Hernandez-Alvarado*, 891 F.2d 1414, 1416 (9th Cir. 1989), and the inferences drawn by the officer must be objective and reasonable, *United States v. Cortez*, 449 U.S. 411, 418 (1981).

Officer Anderson's stop of Defendant's SUV was based on a violation of A.R.S § 28-721(B), which states:

> On all roadways, a person driving a vehicle proceeding at less than the normal speed of traffic at the time and place and under the conditions then existing shall drive the vehicle in the right-hand lane then available for traffic . . . except when overtaking and passing another vehicle proceeding in the same direction . . ..

There is no statutory definition of "normal speed of traffic." And, Officer Anderson did not testify that the SUV was driving less than the "normal speed of traffic" as required by the statute. Rather, he stated that the SUV was going below the speed limit. In articulating the basis for his stop, Officer Anderson conflated "the normal speed of traffic" as equal to the posted speed limit. (RT at 11.) Because driving below the speed limit is not a statutory violation, that did not provide reasonable suspicion to believe the statute had been violated.

During the two-mile distance at issue, two faster vehicles passed the SUV on the left, and the SUV passed two slower vehicles on the right. Because some of the surrounding traffic was going slower and some was going faster than the subject vehicle, the Court finds that the vehicle's rate fell within the normal speed of traffic at that time. This conclusion is bolstered by the officer's testimony that the SUV was travelling at 70-miles-per hour in a 75 mile-per-hour zone. If the "normal speed of traffic" does not encompass a vehicle going up to 5 miles below the speed limit and includes only vehicles driving at or above the posted speed limit, the definition would be unreasonably narrow. *See United States v. Plasencia*, No. CR-14-01813-001-TUC-RM, 2015 WL 631277, at *3, *4 (D. Ariz. Feb. 13, 2015) (finding it unreasonable to conclude that, in a 75-mile-per-hour zone, the "normal speed of traffic" does not include speeds of 73 to 75 miles per

- 4 -

hour or would require a vehicle to violate the posted speed limit). Additionally, the SUV could have observed from a significant distance that it was travelling more rapidly than the sedan and semi-truck ahead in the right-hand lane. As stated by Officer Anderson, it was permissible for the SUV to travel outside the right-hand lane (even if moving below the normal speed of traffic) to overtake those slower vehicles.

Finally, the statute does not require a vehicle to move into the right-hand lane because it is impeding traffic, *see Plasencia*, 2015 WL 631277, at *4 (noting the statutory obligation is triggered only by a vehicle moving slower than normal traffic), but Officer Anderson testified that the statute is intended to prevent traffic from backing-up behind slower vehicles. Here, the officer did not have cause to believe even that the intent of the statute was violated by the SUV. Only two vehicles passed the SUV on the left during the two-mile period Officer Anderson observed it, and he testified that the left-hand lane remained clear for other vehicles to pass the SUV. Further, after the SUV pulled onto the shoulder the video does not reveal a large volume of traffic driving by the stopped SUV.

Under the totality of the circumstances, Officer Anderson did not have reasonable suspicion to stop Defendant's vehicle; therefore, the stop was in violation of the Fourth Amendment. During closing statements, Defendant argued that all evidence seized after the stop, including evidence obtained in a search of the SUV and Defendant's statements, should be suppressed if the Court found the stop to be illegal. (RT at 146.)

Evidence obtained by violating the Fourth Amendment is barred from use at trial by the exclusionary rule. *United States v. Shetler*, 665 F.3d 1150, 1156 (9th Cir. 2011) (citing *Wong Sun v. United States*, 371 U.S. 471, 484-85 (1963)). It is the government's burden to demonstrate that evidence it seeks to admit is not "fruit of the poisonous tree." *United States v. Twilley*, 222 F.3d 1092, 1097 (9th Cir. 2000). The government did not argue in its response to the motion or at the hearing that the exclusionary rule would not preclude all evidence seized after the stop. (Doc. 22 at 4 (arguing that evidence obtained as result of a search of the SUV with Defendant's consent is valid because the traffic stop was lawful).)

Here, the search of the SUV and the subsequent interrogation were a direct result of the illegal stop. If a person was being illegally detained, his consent to a search was tainted by the illegality and the consent was not valid to support the search. *See Florida v. Royer*, 460 U.S. 491, 507-08 (1983). Because all evidence seized pursuant to the stop, including the results of the search and Defendant's statements, were obtained by exploitation of the illegal stop, it must be suppressed. *See United States v. Millan*, 36 F.3d 886, 890 (9th Cir.1994).

### III. RECOMMENDATION

It is recommended that, after its independent review of the record, the District Court grant Defendant's Motion to Suppress based on the traffic stop (Doc. 20) and preclude all evidence obtained from the stop, search, and interrogation.

Pursuant to Federal Rule of Criminal Procedure 59(b)(2), any party may serve and file written objections within 14 days of being served with a copy of this Report and Recommendation. A party may respond to the other party's objections within fourteen days. No reply brief shall be filed on objections unless leave is granted by the district court. If objections are not timely filed, they may be deemed waived.

Dated this 20th day of February, 2019.

_____
Honorable Lynnette C. Kimmins
United States Magistrate Judge